**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  2:17-CR-146-JVB-JEM |
| | ) | 2:19-CV-273-JVB |
| ERIC KRIEG, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the following motions filed by Defendant Eric Krieg, who is litigating these post-conviction matters *pro se*[1]:

1. Motion to Vacate, Set Aside, or Correct Sentence Pursuant 28 U.S.C. § 2255 [DE 44],

2. Motion to Ammend to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 61],

3. Second Motion to Ammend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 85],

4. Fourth Motion to Amend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 86],

5. Motion to Ammend Defendant's Reply to Prosecution's Reply to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 91],

6. Third Motion to Ammend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 92],

7. Motion for Summary Judgement [DE 94],

8. Motion to Expedite [DE 100],

9. Motion to Supplement § 2255 Motion [DE 101],

10. Second Motion for Bail [DE 102],

---

[1] The titles of the motions are provided as written by Krieg on the documents themselves.

11. Second Motion to Supplement § 2255 Motion [DE 104],

12. Fifth Motion to Amend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 107],

13. Second Motion to Amend Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 108],

14. Third Motion to Supplement §2255 Motion [DE 109],

15. Second Motion for Summary Judgement [DE 110], and

16. Motion to Take Judicial Notice [DE 113].

The Government filed a response to the § 2255 motion and a supplement to that response. Krieg also filed a reply to the § 2255 motion. Krieg argues that he was denied the Sixth Amendment right to effective assistance of counsel due to myriad shortcomings on the part of his attorney.

## PROCEDURAL BACKGROUND

Krieg was charged in a five-count indictment of (1) making an unregistered destructive device in violation of 26 U.S.C. §§ 5861(f), 5845(a), (f); (2) mailing a destructive device in violation of 18 U.S.C. § 1716(j)(2); (3) malicious use of explosive materials in violation of 18 U.S.C. § 844(i); (4) possessing a destructive device in furtherance of a crime of violence in violation of 18 U.S.C.§ 924(c)(1)(A), (B)(ii); and (5) mailing threatening communications in violation of 18 U.S.C. § 876(c).

On December 4, 2018, Krieg pled guilty to Counts 1, 2, 3, and 5 pursuant to a plea agreement. Pursuant to the plea agreement, Count 4 was dismissed on the Government's motion at the April 4, 2019 sentencing. On Counts 1, 2, 3, and 5, the Court sentenced Krieg to 348 months of imprisonment followed by two years of supervised release. This term of imprisonment was a binding term of the plea agreement.

2

Krieg was represented by retained counsel Kevin Milner from the October 17, 2017 probable cause hearing and detention hearing through the close of the case.

## ANALYSIS

Title 28 section 2255(a) provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Relief under § 2255 is only appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). Krieg argues that he should be granted relief under § 2255 due to ineffective assistance of his trial counsel, which is a Sixth Amendment issue.

### A. Ineffective Assistance of Counsel Standard

Supreme Court case *Strickland v. Washington* provides the standard for ineffective assistance of counsel. 466 U.S. 668 (1984). This standard requires that "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). The two parts of the standard are often referred to as the "performance" prong and the "prejudice" prong.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

The performance prong is met if the challenger shows that counsel's representation "fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). The review of an attorney's performance is highly deferential to mitigate hindsight

bias, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104 (internal quotation marks omitted). The *Strickland* analysis "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harris v. United States*, 13 F.4th 623, 630 (7th Cir. 2021), reh'g denied (Nov. 10, 2021) (quoting *Harrington*, 562 U.S. at 110). The Court "will not presume deficient performance based on a silent record because [the Court] presume[s] counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption. *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002).

The prejudice prong is met if the challenger shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694).

### B. Pre-Trial Detention

Krieg argued for the first time on January 3, 2022, that there was ineffective assistance of counsel regarding his pretrial detention. *See* (2d Mot. Am. Def's § 2255 Pet., ECF No. 108). There is a one-year period of limitations for motions filed under § 2255. *See* 28 U.S.C. § 2255(f). A timely § 2255 motion cannot be amended to add unrelated claims after the limitations period has concluded. *Mayle v. Felix*, 545 U.S. 644, 662-64 (2005).

The Court will deny this motion to amend the § 2255 petition as to bringing this claim of ineffective assistance of counsel because Krieg did not timely raise the issue. Judgment was entered on April 5, 2019, and Krieg did not appeal. As Krieg was able to file his original § 2255

motion on July 29, 2019, there does not appear to be any governmental action that impeded Krieg's ability to timely bring this matter in a § 2255 motion. Krieg does not assert that this argument is premised on a right newly recognized by the Supreme Court. All of the facts Krieg uses to support his argument could have been discovered through the exercise of due diligence on or before the date of the judgment entered against him. Therefore, under § 2255(f), the limitations period began to run on the date on which Krieg's conviction became final.

Thus, the judgment was final well over one year before Krieg filed the motion to amend on January 3, 2022. Krieg has made no argument for equitable tolling, and the Court sees nothing in the record to suggest that Krieg was diligently pursuing this issue or that the delay in raising the issue was caused by extraordinary circumstances beyond his control. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021).

Therefore, the Court denies the Second Motion to Ammend Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 108] insofar as Krieg requests to add a challenge of ineffective assistance of counsel regarding the issue of Krieg's pre-trial detention because that issue is untimely raised.

### C. Predicate Offense for § 924(c) Charge

Count 4 of the Indictment charged Krieg with violating 18 U.S.C. § 924(c), specifically, "knowingly possess[ing] a destructive device in furtherance of a crime of violence for which he may be prosecuted in a Court of the United States including the charges in Count 2 and Count 3." (Indictment at 5, ECF No. 9). Under 18 U.S.C. § 924(c)(3), a "crime of violence" is a felony offense that meets under either the "elements clause" or the "residual clause." After judgment was entered against Krieg, the United States Supreme Court found the "residual clause" to be unconstitutional on vagueness grounds. *See United States v. Davis*, 139 S.Ct. 2319 (2019).

5

Krieg argues that Milner provided ineffective assistance of counsel because Milner did not advise him that Counts 2 and 3 could not be the predicate crimes of violence for the § 924(c) charge, so when Krieg pled guilty to Counts 1-3 and 5 in exchange for the Government dismissing the § 924(c) charge he received no real benefit from the plea bargain. The Government does not contend that Count 3 could serve as the predicate offense,[2] but it does argue that Count 2 and Count 5 could. The Court will consider each of these counts in turn.

*1. Section 1716(j)(2) (Count 2)*

The Government maintains that Count 2, which alleged a violation of 18 U.S.C. § 1716(j)(2), could be a predicate offense for the § 924(c) charge against Krieg. To resolve this issue, the Court looks to the prevailing case law at the time Krieg was sentenced. "The Sixth Amendment does not require counsel to forecast changes or advances in the law." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993).

Section 1716(j)(2) dictates that "[w]hoever knowingly deposits for mailing or delivery . . . anything declared nonmailable by this section . . . with intent to kill or injure another, or injure the mails or other property, shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1716(j)(2). Subsection (a) of § 1716 declares "all explosives" to be nonmailable. *Id.* at § 1716(a). A violation of § 1716(j)(2) carries a maximum sentence of twenty years, so it is a felony. *See* 18 U.S.C. § 1716(j)(2). The remaining question is if § 1716(j)(2) would have been found to satisfy the elements clause or the residual clause (if the residual clause would have been considered constitutional at the time). The Court will first consider the residual clause.

---

[2] Krieg wishes the Court to take judicial notice of a decision out of the Southern District of Indiana in which 18 U.S.C. § 844(i) was found to not be a crime of violence after *Davis* was decided. Though this case has little bearing on the pre-*Davis* context in which the Court must consider Krieg's arguments, the Court grants Krieg's request and takes judicial notice of *United States v. Sweeney*, No. 4:18-CV-210 (S.D. Ind. Sept. 11, 2019).

At the time of Krieg's guilty plea and sentencing, the Supreme Court had not yet decided *Davis* and held that the residual clause in the "crime of violence" definition for § 924(c) is unconstitutionally vague. Krieg's sentencing hearing occurred on April 4, 2019. Oral arguments in *Davis* were not held until April 17, 2019, and the case was not decided until June 24, 2019. *See id.* at 2319. Even though the case was pending before the judgment against Krieg was entered, Milner was not required to forecast the outcome of *Davis*.

The Government asserts that in *United States v. Saunders*, 166 F.3d 907 (7th Cir. 1999), the Seventh Circuit Court of Appeals determined that § 1716 is an adequate § 924(c) predicate. The Government is incorrect; though Saunders had sent an explosive device through the mail with the intent to kill or injure the intended recipient, the predicate charge in *Saunders* was attempted murder of a United States officer or employee in violation of 18 U.S.C. § 1114. *Saunders*, 116 F.3d at 916.

The Government also points to *Worman v. Entzel*, 953 F.3d 1004 (7th Cir. 2020), decided by the Seventh Circuit Court of Appeals after both Krieg was sentenced and *Davis* was decided. Worman sought habeas corpus relief under 28 U.S.C. § 2241 after being convicted by a jury in the Northern District of Iowa and after challenging his sentence both on direct appeal to the Eighth Circuit and in a § 2255 motion. Worman's charges included a § 1716 violation for mailing an explosive device and a § 924(c) violation for possessing and using a destructive device in furtherance of a crime of violence. *Worman*, 953 F.3d at 1006. The Seventh Circuit Court of Appeals noted that "Worman's mailing of a pipe bomb constituted the predicate crime of violence for purposes of the § 924(c) charge." *Id.* The *Worman* court cited *United States v. Strickland*, 261 F.3d 1271, 1274 (11th Cir. 2001), and *United States v. Collins*, 109 F.3d 1413, 1419 (9th Cir. 1997), both of which concluded that § 1716 violations are predicate offenses for § 924(c). This

provides more support for the Government's position, though the *Worman* Court was merely reporting and not directly deciding the issue of whether § 1716 was a proper § 924(c) predicate offense either before or after *Davis*.

Despite neither *Saunders* nor *Worman* being conclusive statements on whether § 1716 is a § 924(c) predicate under pre-*Davis* precedential law in this circuit, the Seventh Circuit Court of Appeals had not been silent on the issue. In *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016), the court held that the residual clause of § 924(c) was unconstitutionally vague. *Id.* at 996. However, subsequent decisions that relied on *Cardena—United States v. Jenkins*, 849 F.3d 390, 394 (7th Cir. 2017), and *United States v. Jackson*, 865 F.3d 946, 954 (7th Cir. 2017)—were vacated and remanded by the Supreme Court on May 14, 2018, for reconsideration in light of *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018). *United States v. Jenkins*, 138 S. Ct. 1980 (2018); *United States v. Jackson*, 138 S. Ct. 1983 (2018). This was before Krieg's November 27, 2018 plea agreement was reached. Before the Seventh Circuit reconsidered *Jackson* and *Jenkins* (which would not occur until after Krieg was sentenced and *Davis* was decided, the Seventh Circuit noted one argument for not using the categorical approach for § 924(c)'s residual clause:

> The government had asked the Supreme Court to return [*Jackson* and *Jenkins*] to [the Seventh Circuit] because *Dimaya* "suggest[ed] that a court could, consistent with the canon of constitutional avoidance, construe Section 924(c)(3)(B) to permit application of a non-categorical approach that considers the defendant's conduct." The government was careful to distance section 924(c)(3)(B) from one of the prime justifications for applying the categorical approach to the residual clause of section 924(e) of the ACCA, section 16(b), and the guidelines:
>
> > A non-categorical approach . . . may make particular sense in the context of Section 924(c)(3)(B). Unlike Section 16(b) of the ACCA's residual clause, Section 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction, the specific facts of which may not be before the court. Section 924(c) instead employs the term "crime of violence" to describe the conduct involved in the present offense with which the defendant is charged.

*Cross v. United States*, 892 F.3d 288, 303 n.1 (7th Cir. 2018) (citations omitted). The *Cross* court neither accepted nor rejected the argument. Thus, the status of the residual clause of § 924(c) was uncertain at both the Supreme Court and Seventh Circuit Court of Appeals levels at the time Milner advised Krieg regarding the Government's proffered plea bargain, and given the strong presumption of reasonable professional assistance, the Court cannot say that Milner failed to function as counsel regarding the constitutionality of the residual clause. *See Strickland*, 466 U.S. at 689; *Harrington*, 562 U.S. at 104.

Under the residual clause, the Court would have either considered whether the ordinary case of a § 1716(j)(2) violation would naturally involve a person acting in disregard of a substantial risk that physical force might be used against the person or property of another, *Davis*, 139 S.Ct. at 2326, or, under the approach advocated by the Government in *Davis* itself, looked at Krieg's specific conduct in the charged § 1716(j)(2) violation, *id.* at 2327.

In the "ordinary case" of mailing a nonmailable item with the intent to kill or injure another, or injure the mail or other property, there is a substantial risk that physical force might be used against the person or property of another. Even if the intent is to harm one's own property, there is a substantial risk that while the nonmailable item is proceeding through the mail system that the item will cause property damage or personal injury before reaching the intended target of one's own property, either through rough handling, malfunction of the item, security screening procedures due to the item being flagged as suspicious, or various other matters that could happen to the item once it is out of the sender's control. This is not to mention that in many "ordinary cases," the intent is to cause injury to the person or property of another. Indeed, as the Government notes below, it is unaware of any case in which a § 1716(j)(2) violation was charged for injuring one's own property.

Further, it was more likely that if *Davis* would have upheld the residual clause that it would have done so on the basis of the Government's proposed approach in *Davis*: that the defendant's specific conduct in the charged offense must be considered in a case-specific approach. Under this approach, Krieg admitted an intent to kill or injure another, so there would be no question that the residual clause would have been met if the residual clause had been found constitutional on this basis. In this context, it was not deficient performance for Milner to advise Krieg that he was vulnerable to conviction on the § 924(c) charge with § 1716(j)(2) as the predicate offense.

Even assuming for the moment that Krieg is correct that Milner should have anticipated *Davis*'s holding of the residual clause's unconstitutionality, the Government has an argument that § 1716(j)(2) would have been found to be a crime of violence under the elements clause of § 924(c). Under this clause, a crime of violence is a felony that

> has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A).

Section 1716(j)(2) also requires "intent to kill or injure another, or injure the mails or other property." Krieg argues that § 1716(j)(2) encompasses conduct intending to injure one's own property, which would mean that the statute could be violated without the use, attempted use, or threatened use of physical force against the person or property *of another*. *See United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018) (noting that the federal arson statute does not meet the elements clause of § 924(c) because arson can be committed against one's own property).

The Government contends that Krieg has not identified, and the Government is not aware of, any case in which a defendant was charged with violating § 1716(j)(2) via intent to injure their own property, which shows that § 1716(j)(2) does not encompass intent to injure one's own

10

property. Krieg counters that § 1716(j)(2) is only charged an average of sixteen time per year, so saying that it has not been charged against own property in the past is not very strong evidence that it could not or would not be charged that way in the future. This very ambiguity, with no clear case law, provides another ground to support the finding that Milner's performance was constitutionally sufficient. If Krieg had not accepted the plea deal, he ran the risk of the Government's argument prevailing regarding § 1716(j)(2).

The above uncertainty regarding whether § 1716(j)(2) could be a predicate offense through either the residual clause or the elements clause is sufficient to find that Milner did not provide deficient performance for the *Strickland* analysis. If Krieg did not accept the plea bargain, he would have taken on an actual risk of conviction on Count 4 if he chose to go to trial. That is, the Government's agreement to dismiss Count 4 in return for Krieg's guilty pleas to Counts 1, 2, 3, and 5 provided a real benefit to Krieg. In the interest of completeness, the Court will proceed to consider whether Count 5 could have served as a predicate offense under § 924(c).

### 2. Section 876(c) (Count 5)

The Court will first determine whether, as the Government argues, the language of Count 4 is broad enough to include Count 5 as a predicate offense. "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960) In *United States v. Willoughby*, 27 F.3d 263 (7th Cir. 1994), the Seventh Circuit Court of Appeals held that a § 924(c) charge that specified use of a firearm "during and in relation to a drug trafficking crime, to wit: the distribution of cocaine" could not use a drug trafficking crime other than cocaine distribution as the predicate offense; to do so would be an impermissible broadening of the indictment. *Id.* at 266. However, the indictment need not list the specific predicate offense for a § 924(c) charge. *Id.*

The Government contends that Count 4 against Krieg is distinguishable from *Willoughby* in that the count merely provided Counts 2 and 3 as examples of predicate offenses but, in using the word "including" did not state an exhaustive or exclusive list. It appears that Milner agreed with the Government. In his affidavit, Milner avows that he and Krieg "discussed at length whether counts 1, 2, 3, *or 5* would be considered a crime of violence for purposes of count 4." (Milner Aff. ¶ 3, ECF No. 60-1) (emphasis added).

The Court holds that it was not constitutionally deficient performance for Milner to believe that the predicate offense for Count 4 was not necessarily constrained to either Count 2 or Count 3.[3] Had Count 4 read "to wit," "namely," or "specifically," the charges in Count 2 and Count 3 (or similarly exclusive language), then the outcome would be different. *Willoughby* states that the predicate offense need not be charged at all, and the Indictment did not restrict Count 4 to relying on only Count 2 or Count 3 as the predicate offense.

Count 5 charged Krieg with violating 18 U.S.C. § 876(c) by mailing a threatening communication. The Seventh Circuit Court of Appeals noted less than a month after Krieg was sentenced that "every court to consider the issue, both before and after *Johnson* [*v. United States*, 576 U.S. 591 (2015)], has concluded that a § 876 conviction entails a threat to use physical force, and is thus categorically a crime of violence." *Sotelo v. United States*, 922 F.3d 848, 855-56 (7th Cir. 2019) (collecting cases within the career offender context of the sentencing guidelines); *see also United States v. Sullivan*, 75 F.3d 297, 300 (7th Cir. 1996) (holding § 876 is a crime of violence for purposes of assessing career offender status).

The Indictment charges that Count 4 of the Indictment occurred on or about September 6, 2017, and that Count 5 occurred on or about September 29, 2017. This would pose a constructive

---

[3] To be clear, Milner did not specify that he and Krieg had concluded that Count 5 would be considered a crime of violence. He averred only that he and Krieg discussed whether it would be.

amendment issue as discussed in *Stirone* and *Willoughby*. However, the five-year statute of limitations for non-capital federal offenses had not yet passed, 18 U.S.C. § 3282, so a superseding indictment could have adjusted the date to encompass the Count 5 offense. This further supports the Court's finding that it was not deficient performance for Milner to allow Krieg to choose to plead guilty.

Krieg makes several other arguments, but Milner did not need to give credence to out of circuit and unpublished decisions in formulating his advice to Krieg. Similarly, untried, novel theories that Krieg may have presented at trial to be acquitted on Count 4 are no reason to find Milner's performance deficient. Krieg pled guilty to Count 5, so he cannot argue that he did not mail a threatening communication. Accepting a plea bargain is a method of risk management for both sides of the case. If Krieg had gone to jury trial, he may have been acquitted on all counts, but, on the other hand, he may have been convicted on all counts. Again, by accepting the plea bargain, Krieg received a benefit—no more exposure to the possibility of a § 924(c) conviction.

Though § 876 qualifies as a predicate offense for § 924(c), the Court notes that it is not clear from the record whether Krieg possessed a firearm or destructive device in furtherance of Count 5. As Count 4 was dismissed, the record is silent as to the evidence the Government would have submitted to show that Krieg possessed a firearm or destructive device. Krieg contends that no firearm or destructive device was used. This incomplete record is insufficient to show deficient performance, and the Court can end its analysis here, as the previous analysis showed that Krieg was vulnerable to conviction on Count 4 with Count 2 serving as the predicate offense, so Milner's performance was not constitutionally deficient.

In sum, whether the residual clause of § 924(c) was unconstitutionally vague was an open question at the time Krieg pled guilty and whether § 1716(j)(2) met the elements clause for a

§ 924(c) predicate offense was open to debate. There is also a possibility that the Government could have filed a superseding indictment to bring Count 5 in as a possible predicate offense, but this possibility is superfluous and not necessary for the Court's conclusion regarding the § 924(c) predicate offense. Under the uncertainties that existed at the time Krieg accepted the plea agreement and was sentenced, it was not deficient performance for Milner to advise Krieg to accept the Government's offer and remove Krieg's potential exposure to a § 924(c) conviction. Accordingly, there was no ineffective assistance of counsel on this basis.

### D. Advice Regarding Consecutive or Concurrent Sentences

Whether a sentence runs concurrently or consecutively to another sentence is a matter for the Court's discretion. *United States v. Bour*, 804 F.3d 880, 885 (7th Cir. 2015) (quoting *United States v. Morgano*, 39 F.3d 1358, 1366 (7th Cir. 1994)). Here, though, the plea agreement contained a binding 29-year sentence as a term of the agreement. Krieg contends that he would not have accepted the plea agreement if his counsel had advised him that his sentence on Count 3 could be sentenced to run concurrently with his sentences on his other convicted counts. However, under oath at his change of plea hearing, the following colloquy occurred after the Court stated the maximum possible penalties:

Court: Mr. Krieg, do you understand these penalties?

Krieg: Yes.

Court: And you've discussed this all with Mr. Milner, correct?

Krieg: Yes.

Court: And you discussed those with Mr. Milner before you decided to accept the plea agreement?

Krieg: Yes.

Court: And before you decided to change your plea to Count 1, 2, 3, and 5 to guilty; is that correct?

14

Krieg: Yes.

Court: Mr. Krieg, do you understand that the sentence for each count may be ordered to be served concurrently or consecutive with the other?

Krieg: Yes.

Court: Do you believe you understand what that means?

Krieg: I do.

Court: If a sentence is served concurrently with another, it means both are served at the same time. If a sentence is served consecutively with another, that means the second sentence begins after the first sentence ends.

Krieg: Yes.

Court: Therefore, if the Court sentences you to consecutive sentences on Counts 1, 2, 3, and 5, your total term of imprisonment could be 75 years and your supervised release could be 16 years. Do you understand that?

Krieg: Yes.

Court: And you discussed that all with Mr. Milner; is that correct?

Krieg: Yes.

(Change of Plea Tr. 13:15-14:18, ECF No. 57).

A defendant "cannot obtain relief [in relation to a guilty plea] by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), judgment vacated and remanded on other grounds, 554 U.S. 911 (2008). With no compelling reason presented[4], Krieg is precluded from now recanting his testimony at the change of plea hearing and arguing that he was not advised that his sentences could be ordered to run consecutively in an attempt to vacate his sentence.

---

[4] Krieg states that Milner's ineffective assistance itself is the reason for Krieg's change, but this is a circular argument that presupposes the ultimate conclusion (ineffective assistance) in attempt to prove that conclusion. It is not a compelling reason for the disparity between Krieg's current arguments and his statements under oath.

Further, a consecutive sentence on a § 844(i) conviction is legally proper. *See* 18 U.S.C. § 844(i) (neither mandating nor precluding a consecutive sentence).Krieg's citation to the out-of-circuit and unpublished decision in *United States v. Zajac*, No. 20-4123, 2022 WL 363343 (10th Cir. Jan. 28, 2022), provides him no aid, as unlike in *Zajac*, the Court was not under the mistaken impression that a consecutive sentence on the § 844(i) was statutorily mandated. *See id.* at *2.

### E. Permitting Krieg to Admit Intent to Kill and to Concede Bodily Injury

Krieg argues that Milner provided ineffective assistance by permitting Krieg to admit to intent to kill and to concede bodily injury. However, Krieg stated at the change of plea hearing that he agreed that the Government's evidence would show beyond a reasonable doubt that he committed the offenses charged in Counts 1, 2, 3, and 5, including that he intended to kill and injure Victim 1 and that the explosion of his pipe bomb caused personal injury to Victim 2. (Change of Plea Tr. 29:10-23, 31:18-32:8, 33:19-34:11 35:20-36:5, ECF No. 57). Having not shown a compelling reason for the change in his position, Krieg cannot now argue that the Government's evidence would not have shown these elements and that Milner was consequently deficient in having Krieg admit the same. *Nunez*, 495 F.3d at 546.

Krieg also argues that he is actually innocent of the § 876(c) charge because his threat that underpins the § 876(c) charge was to kill, and he argues that § 876(c) does not prohibit threats to kill. This argument is waived by the appellate waiver in the plea agreement, (Plea Agreement ¶ 7.f, ECF No. 28), and the argument is also incorrect. Section 876(c) covers threats "to injure the person of the addressee or of another." A threat to kill is *de facto* a threat to injure.

### F. Void for Vagueness Argument

Krieg argues that Milner should have argued that § 844(i) is void on vagueness grounds because "personal injury" is not defined. However, Milner was not obligated to pursue novel legal

16

theories in order to render effective assistance. Even if this theory had proven successful in another case after Krieg's conviction, Milner would not be found to have been ineffective. *See Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) ("Sixth Amendment does not require counsel to forecast changes or advances in the law"). Milner is all the more not deficient here where the Court is unaware of any holding that the lack of definition for "personal injury" renders § 844(i) void on vagueness grounds.

### G. Benefit of the Plea Agreement

Krieg argues that his agreed-to binding sentence of 29 years is of little benefit to him. However, Krieg acknowledged at his change of plea hearing that the maximum sentence he faced on only Counts 1, 2, 3, and 5 was 75 years. (Change of Plea Tr. 14:11-18). This does not include his potential exposure to a mandatory minimum sentence of 30 years on Count 4 if Krieg had gone to trial and been convicted of violating § 924(c) with § 1716(j)(2) as the predicate offense. *See* 18 U.S.C. § 924(c)(1)(B)(ii). Krieg received a benefit from the plea agreement, and this argument fails.

### H. Refusal to Withdraw Guilty Plea

Krieg asserts that after he saw his presentence report he asked Milner to withdraw his guilty plea but was told that it was too late to do so. However, at the sentencing hearing, which, per Krieg's testimony, was after he read the presentence investigation report, the following colloquy took place:

> Milner: . . . So, again, without being repetitive, I would ask that [the Court] accept the plea agreement as proposed and impose the 29 years agreed upon sentence.
>
> Court: Thank you, Mr. Milner.
>
> Mr. Krieg, do you agree with everything that Mr. Milner said in your behalf so far today?
>
> Krieg: Yes.

(Sentencing Tr. 9:11-17, ECF No. 58); *see also* (Def.'s Resp. to Gov't's Resp. at 25, ECF No. 78 (indicating Krieg told Milner before the sentencing hearing that he wanted to withdraw his plea)). Though Krieg may have considered withdrawing his guilty plea, by the time of the sentencing hearing, he had decided against it, as his above testimony shows.

Additionally, Krieg has not explained on what grounds he would have sought to withdraw his guilty plea and what evidence he would have presented in support. Therefore, there is no reason to believe that a motion to withdraw the guilty plea would have been successful, so Krieg has not shown that he was prejudiced. Consequently, he cannot show ineffective assistance of counsel on this basis.

### I. Presentence Investigation Report and Sentencing Recommendation

Krieg raises several enumerated objections to the presentence investigation report and the sentencing recommendation that he contends Milner should have raised in order to provide effective assistance. However, at sentencing, the Court discussed these documents with Krieg:

> Court: And, Mr. Milner, did both you and your client receive a copy of the presentence report, addendum, and sentencing recommendation?
>
> Milner: We did, Your Honor.
>
> Court: And did you and your client review those documents?
>
> Milner: We did.
>
> Court: Mr. Krieg, did you review the presentence report and addendum and go over their contents with Mr. Milner?
>
> Krieg: I reviewed them.
>
> Court: Okay. And did you also review with Mr. Milner the probation recommendation as to your sentence?
>
> Krieg: Yes.

> Court: Okay. The addendum to the presentence report indicates that there are no factual or legal issues in dispute as to the presentence report and that there is no dispute as to the appropriate offense level and criminal history category.
>
> And, Mr. Krieg, do you agree you have no objections to the presentence report?
>
> Krieg: Yes.

(Sentencing Tr. 4:12-5:9, ECF No. 58). Krieg also affirmed that he agreed with the calculations for the offense level in the presentence investigation report and the sentencing guideline calculations. *Id.* at 6:3-7:5. Having previously stated under oath that he had no objections, Krieg cannot now state that Milner was ineffective for not making objections without a compelling reason, and Krieg has shown none. *Nunez*, 495 F.3d at 546.

### J. Discretionary Terms of Supervised Release

Krieg asserts that Milner should have objected to the discretionary terms of supervised release as onerous and not necessary in light of Krieg's criminal history. The Court verified with Krieg and Milner that they had no objections to the conditions of supervision. (Sentencing Tr. 36:17-37:5, ECF No. 58). Krieg has shown no compelling reason for his change in position on this matter, *see Nunez*, 495 F.3d at 546, so the Court denies § 2255 relief on this basis.

### K. Failure to Provide a Timely Copy of the PSR

Krieg maintains that, due to Milner, he was not timely provided with a copy of the presentence investigation report, but Krieg stated under oath that he received a copy and went over it with counsel before his sentencing hearing. (Sentencing Tr. 4:12-5:1). Given that Krieg and Milner were able to review the report together in advance of sentencing, the Court sees no prejudice that would have occurred due to the timing of the delivery of the presentence investigation report.

**L. Notice of Appeal**

An attorney provides constitutionally deficient performance if they fail to file a notice of appeal despite the defendant's express instructions (even where an appellate waiver has been signed), and prejudice is presumed. *Garza v. Idaho*, 139 S.Ct. 738, 749-50 (2019).

Krieg states that, after reading the presentence investigation report, he told Milner to file an appeal, to which Milner responded that they would discuss it after sentencing. (Def.'s Resp. to Gov't Resp. at 25, ECF No. 78). Krieg admits that he did not ask Milner to file an appeal after the sentencing hearing; in fact, Krieg asserts that the subject of an appeal was not even discussed. *Id.* On the other hand, Milner, in his affidavit, states that Krieg never asked him to file an appeal, that he specifically asked Krieg at the sentencing hearing whether Krieg wanted Milner to file a notice of appeal, and that Krieg advised that he did not wish to seek an appeal. (Milner Aff. ¶ 5, ECF No. 60-1).

The Court must determine whether a request to appeal before sentencing occurs is sufficient to trigger the obligation for counsel to file a notice of appeal. If so, then a hearing is necessary to resolve the conflicting evidence. If not, then counsel was not obligated to file a notice of appeal under either set of evidence, so there would be no ineffective assistance of counsel.

There is a line of cases finding notices of appeal effective despite being filed before sentencing but after a jury verdict. *See United States v. Davis*, 902 F.2d 591, 593 (7th Cir. 1990) (collecting cases, including *United States v. Moore*, 616 F.2d 1020, 1031-32 (7th Cir. 1980)). Accordingly, since a notice of appeal *filed* before sentencing can be effective, the Court sees no reason to hold that a pre-sentencing *request* to counsel to file a notice of appeal does not bestow on counsel the obligation to effect the appeal on the condition that there was no further discussion of the subject after sentencing or entry of judgment.

20

Accordingly, an evidentiary hearing is needed to resolve the conflict in the evidence regarding whether Krieg requested his counsel to file a notice of appeal. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court will refer the evidentiary hearing to a magistrate judge.

### M. Second Motion for Bail

The Court previously denied Krieg's request for bail during the pendency of his § 2255 motion. As the Court noted in its decision on the previous motion, "federal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their cases, but a power to be exercised very sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). Under these circumstances, bail is not often granted because

> [a] defendant whose conviction has been affirmed on appeal (or who waived his right of appeal, as by pleading guilty, or by foregoing appeal after being convicted following a trial) is unlikely to have been convicted unjustly; hence the case for bail pending resolution of his postconviction proceeding is even weaker than the case for bail pending appeal. And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted.

*Id.*

District courts within the Seventh Judicial Circuit have adopted a two-pronged test for determining whether bail is appropriate pending resolution of a § 2255 motion: (1) does the petition raise a substantial constitutional claim which has a high probability of success, and (2) do extraordinary or exceptional circumstances exist such that bail must be granted to afford the petitioner an effective remedy? *See Zollicoffer v. United States*, Civil No. 15-03337, 2017 WL 76936, at *2 (C.D. Ill. Jan. 9, 2017).

The Court has identified one matter which needs an evidentiary hearing, but the Court will not say that there is a "high probability of success," as both sides have presented evidence in favor of their position. For example, there is no "overwhelming consensus" that a new precedential ruling will apply to Krieg's claim. *See id.* Krieg has a chance of success, but the Court cannot say

that his chance of success is greater than the Government's. Therefore, the Court denies Krieg's request for bail.

## CONCLUSION

Based on the foregoing analysis:

1. The Motion to Vacate, Set Aside, or Correct Sentence Pursuant 28 U.S.C. § 2255 [DE 44] is **DENIED** except as to the issue of whether Milner provided ineffective assistance of counsel by failing to file a notice of appeal, which is the sole issue in Krieg's pursuit of § 2255 relief that **REMAINS PENDING**;

2. The Motion to Ammend to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 61] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

3. The Second Motion to Ammend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 85] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

4. The Fourth Motion to Amend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 86] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

5. The Motion to Ammend Defendant's Reply to Prosecution's Reply to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 91] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

6. The Third Motion to Ammend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 92] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

7. The Motion for Summary Judgement [DE 94] is **DENIED**;

8. The Motion to Expedite [DE 100] is **GRANTED** as to the request for a ruling on the arguments on which the Court is denying relief in this Opinion and Order and **DENIED** as to all other requests;

9. The Motion to Supplement § 2255 Motion [DE 101] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

10. The Second Motion for Bail [DE 102] is **DENIED**;

11. The Second Motion to Supplement § 2255 Motion [DE 104] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

12. The Fifth Motion to Ammend Defendant's Response to Prosecution's Response to Defendant's § 2255 Petition per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 107] is **GRANTED** to the extent Krieg asks the Court to submit additional arguments but is **DENIED** as to the request for § 2255 relief as to those additional arguments;

13. The Second Motion to Ammend Defendant's § 2255 Petition Per Rule 15(a)(2) of Federal Rules of Civil Procedure [DE 108] is **DENIED** as to the pre-trial detention argument, is **GRANTED** to the extent Krieg asks the Court to submit other additional arguments, and is **DENIED** as to the request for § 2255 relief as to those additional arguments;

14. The Third Motion to Supplement §2255 Motion [DE 109] is **GRANTED** to the extent that Krieg wishes to make the Court aware of the *Zajac* case but **DENIED** as to the request to vacate Krieg's sentence due to sentences being ordered consecutively;

15. The Second Motion for Summary Judgement [DE 110] is **DENIED**; and

16. The Motion to Take Judicial Notice is **GRANTED** and the Court **NOTICES** that, after *Davis* was decided, the court in *United States v. Sweeney*, No. 4:18-CV-210 (S.D. Ind. Sept. 11, 2019), held that 18 U.S.C. § 844(i) is not a crime of violence.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3), the Court hereby **REFERS** this matter to Magistrate Judge John Martin (1) to conduct the evidentiary hearing needed on the subject of whether Krieg asked Milner to file a notice of appeal, (2) to submit to the undersigned proposed findings of fact and recommendations for the disposition of that issue, and (3) to resolve any nondispositive ancillary matters as needed in the course of bringing this matter to evidentiary hearing, provided that doing so would not be inconsistent with the Constitution or laws of the United States.

SO ORDERED on July 21, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT

23